IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

STARSKY IVEY,

               Petitioner,

   v.

JAY LANE, SUPERINTENDENT, et al.,

               Respondents.

CIVIL ACTION
NO. 17-0310

## OPINION

**Slomsky, J.**                                                            **December 11, 2018**

## I.     INTRODUCTION

Before the Court is the pro se Petition for Writ of Habeas Corpus of Petitioner Starsky Ivey

("Petitioner"), a state prisoner, filed pursuant to 28 U.S.C. § 2254.  (Doc. Nos. 1, 5.)  On May 4,

2018, United States Magistrate Judge Henry S. Perkin issued a Report and Recommendation

("R&R"), recommending that the Petition be denied and that a certificate of appealability not be

issued.  (Doc. No. 26.)  On May 5, 2018, Petitioner filed Objections to the R&R.  (Doc. No. 29.)

For the reasons stated below, the Court will approve and adopt the R&R (Doc. No. 26), and will

deny the Petition (Doc. Nos. 1, 5).[1]

## II.    BACKGROUND

The facts of Petitioner's case are summarized as follows:

> On January 10, 1998, during the evening hours, numerous people were inside a
> private residence located at 2125 S. 58th Street.  Included among these people were
> the defendant and the decedent, Melvin Robertson, as well as the defendant's
> brother, Hutchinson Ivey, his girlfriend, Tanya Wood, and Mr. Robertson's

---

[1]   For purposes of this Opinion, the Court has considered Petitioner's Habeas Corpus Petition
(Doc. Nos. 1, 5), the Response in Opposition to the Petition (Doc. No. 22), Petitioner's Reply
(Doc. No. 24), the Report and Recommendation (Doc. No. 26), Petitioner's Objections to the
Report and Recommendation (Doc. No. 29), and the pertinent state court record.

girlfriend, Lorraine Stephens, who is also the defendant's sister. Tanya's uncle, Thomas Wood, was also there with his two young children.

Defendant and decedent got into a verbal argument. . . . The defendant left the house. The decedent and Lorraine Stephens left shortly after [defendant] left. Mr. Robertson, however, returned to the house after Hutchinson Ivey called him at Ms. Stephens' house and asked him to bring some food.

Several minutes after Mr. Robertson returned, defendant returned, accompanied by two or three men. At this point Mr. Robertson was using the telephone in the living room. After ordering the decedent to put the phone down, defendant pulled out a gun, and shot directly at Mr. Robertson several times. After Mr. Robertson fell onto the floor, defendant went over to him, put the gun to his head and clicked it at least two times, but the gun misfired.

(Commonwealth v. Ivey, No., 9/21/2000 (Tr. Ct. Op.), pp. 1-2.)

On February 22, 2000, Petitioner pled guilty to one count each of murder generally[2] and possession of an instrument of a crime ("PIC") before the Philadelphia County Court of Common Pleas. (Doc. No. 26 at 1.) On March 1, 2000, after conducting a degree-of-guilt hearing, the trial court found Petitioner guilty of first-degree murder. (Id.) On April 28, 2000, the trial court sentenced Petitioner to life imprisonment for first-degree murder and to concurrent six (6) to twelve (12) months' imprisonment for PIC. (Id. at 1-2.) Petitioner filed a notice of appeal from his sentence and the trial court directed him to file a Statement of Matters Complained of on Appeal in accordance with Pennsylvania Rule of Appellate Procedure 1925(b). (Id. at 1.) Petitioner failed to do so. (Id.)

---

[2]  A plea of guilty to murder generally is governed by Pennsylvania Rule of Criminal Procedure 590(c). See Commw. v. Passmore, 857 A.2d 697, 709-10 (Pa. Super. Ct. 2004). Rule 590(c) provides:

In cases in which the imposition of a sentence of death is not authorized, when a defendant enters a plea of guilty or nolo contendere to a charge of murder generally, the degree of guilt shall be determined by a jury unless the attorney for the Commonwealth elects to have the judge, before whom the plea was entered, alone determine the degree of guilt.

Consequently, on September 21, 2000, the trial court issued an opinion stating: "[w]ithout the benefit of a Rule 1925(b) statement, or post sentence motions, this court is unable to identify the grounds for an appeal and suggests that this appeal be dismissed for failure to preserve any issue for appeal." (Id. at 2.) Even without the benefit of a Rule 1925(b) statement, the trial court went on to address its decision on Petitioner's degree of guilt. As summarized in the R&R, the trial court opined as follows:

> The defense presented two witnesses, Hutchinson Ivey, the defendant's brother, was present inside the house that evening at the time of the argument. He noticed that his brother's eyes were bloodshot and that he was acting crazy so he thought he might be high on something. After being qualified as an expert in forensic pathology, Dr. Reed David Goldstein testified that the defendant was incapable of having the specific intent to kill because defendant's low intelligent quotient affected his ability to plan and make decisions, despite being able to escape and successfully evade authorities in another state for several months. The court found this testimony not persuasive.
>
> . . . .
>
> In the instant case, defendant did not contest the fact that he had killed the decedent in that he pled guilty to murder generally. Defendant asserted that he was incapable of forming the specific intent to kill. Specific intent can be inferred from the defendant's use of a deadly weapon on a vital part of the victim's body. Commonwealth v. Bond, 539 Pa. 297, 652 A.2d 368 (1995). Defendant shot the unarmed victim at least twice, once in the head and once in the chest. Defendant argued that his degree of murder should have been lowered from first to third because of his diminished capacity. Diminished capacity is applicable in a case such as this in which defendant admits criminal liability but contests the degree of guilt. Commonwealth v. Paolello, 542 Pa. 47, 665 A.2d 439 (1995). The defense is an extremely limited one. Commonwealth v. Legg, 551 Pa. 437, 711 A.2d 430 (1998). The defense can only be established if the proponent proves that at the time of the killing, he was suffering from a mental disease, illness, or delusional mental state that wholly precluded the cognitive functions of planning, premeditation, and deliberation. See Commonwealth v. Zettlemoyer, 500 Pa. 16, 454 A.2d 937 (1982).
>
> Defendant failed to present credible evidence to establish that he was incapable of forming the specific intent to kill at the time of the murder. Defendant's psychologist testified that defendant['s] intelligent quotient was in the borderline to mental retardation ranges. Dr. Goldstein's testing also established that the defendant had impaired higher level cognitive functions (N.T. 2/29/00, p. 99). Dr. Goldstein explained that this impairment would affect his ability to plan, weigh

alternatives, and make correct decisions when presented with a variety of options. (Id.)

While Dr. Goldstein concluded that defendant was unable to form the specific intent to kill, this conclusion was based upon an assumption that if defendant had reason to suspect or believe he was doubted or would be threatened, [defendant] would likely have difficulty considering alternative options. There are no facts in the instant case which would suggest that defendant would have had any reasonable basis to feel threatened. Defendant engaged in a verbal disagreement with the decedent. He left the premises and returned, accompanied by at least one other individual. The decedent could not have been perceived as threatening defendant as he stood in the living room attempting to use the telephone. The physical evidence established that the decedent had one hand in a defensive position trying to prote[c]t himself as he was shot in the head. Perhaps most telling in this case, was defendant's calm and deliberate actions in walking over to the decedent as he lay helpless on the floor, bleeding from two gunshot wounds to his vital organ, placing a gun next to his head and attempting to shoot him twice again in the head at close range.

It is the duty of the fact finder to resolve defendant's intent and this court concluded, based upon overwhelming evidence that the defendant was the aggressor in the initial conflict between him and the decedent and that he returned to the house with only one thing on his mind, his intent to kill the decedent.

(Id. at 2-3, citing Commonwealth v. Ivey, No., 9/21/2000 (Tr. Ct. Op.), pp. 5-6.)

On October 3, 2000, Petitioner filed his 1925(b) Statement beyond the time prescribed by statute. (Id. at 3.) Petitioner claimed his Statement was untimely because "counsel did not have the notes of testimony from trial in order to be able to properly forms [sic] the questions and issues to be addressed by the court . . . ." (Id.) On February 15, 2002, the Pennsylvania Superior Court affirmed the trial court's judgment of sentence, finding that Petitioner's failure to timely file his 1925(b) Statement waived any issues presented therein for appeal. (Id.) On March 18, 2002, Petitioner's judgment of sentence became final.[3] (Id. at 4.)

---

[3] After the Superior Court affirmed his judgment of sentence, Petitioner did not file a petition for allowance of appeal in the Pennsylvania Supreme Court. (Doc. No. 26 at 3.) Accordingly, his judgment became final thirty days later, on March 18, 2002. See Pa.R.A.P. 1113.

Shortly thereafter, Petitioner commenced a series of petitions for collateral relief from his

sentence under Pennsylvania's Post-Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. § 9541, et seq.

The R&R summarized Petitioner's PCRA attempts as follows:

On April 21, 2003, Petitioner filed a pro se petition for collateral review under the Pennsylvania Post Conviction Relief Act ("PCRA"), 42 Pa. C.S.A. § 9541, et seq. Counsel was appointed and filed a "no-merit" letter pursuant to Commonwealth v. Turner, 544 A.2d 927 (Pa. 1988) and a request to withdraw representation pursuant to Commonwealth v. Finley, 550 A.2d 213 (Pa. Super. 1988). On July 21, 2003, the PCRA court dismissed the petition without hearing. On June 10, 2005, the Pennsylvania Superior Court affirmed the dismissal. Petitioner did not file a petition for allowance of appeal in the Pennsylvania Supreme Court.

On September 28, 2009, Petitioner signed his second pro se PCRA petition which was docketed on October 2, 2009. Petitioner invoked the after-discovered evidence exception to the PCRA timeliness requirement by citing the common law exception to the jurisdictional time bar established in Commonwealth v. Haag, 809 A.2d 271 (2002) and Commonwealth v. Cruz, 852 A.2d 287 (2004), which held that a PCRA petitioner's mental incompetency may qualify under the statutory after-discovered evidence exception on the basis that incompetence prevented petitioner from timely raising or communicating claims. Judge Sheila Woods-Skipper held that petitioner did not properly satisfy an exception to the PCRA timeliness requirements when she opined the following:

The PCRA mandates that exceptions must be pled within sixty days of the date the claim could have been presented. Petitioner points to his November 3, 1999 Report of Neuropsychological Evaluation completed by Dr. Reed D. Goldstein as evidence of his incompetence, and thus his inability to properly file his first PCRA. "To qualify for the exception to the PCRA time restrictions, found in Section 9545(b)(1)(ii), Appellant had to demonstrate that he exercised due diligence in learning the purported 'newly discovered' facts." Commonwealth v. Monaco, 996 A.2d 1076, 1082 (Pa. Super. 2010). Here, Petitioner argues that his mental incompetence, as evidenced by the November 3, 1999 report, did not allow him to discover that he was incompetent. Under the "due diligence" standard in Monaco, Petitioner fails to demonstrate any exercise of due diligence as to his incompetence since the 1999 report or the Cruz decision. Petitioner did not file his current PCRA petition until September 28, 2009. This exception claim was raised well past the sixty-day window provided by the PCRA statute. Therefore, Petitioner's failure to properly satisfy an exception to the timeliness

> requirements of the Post Conviction Relief Act requires this Court
> to dismiss Petitioner's untimely petition.
>
> Commonwealth v. Ivey, No. CP-51-CR-1204871-1998 (Pa. Super. Ct. October 13,
> 2011). Petitioner did not file a notice of appeal to the Pennsylvania Superior Court.
>
>     On April 4, 2012, Petitioner filed a third pro se PCRA petition within sixty
> days of the Supreme Court decisions in Missouri v. Frye, 132 S.Ct. 1399 (2012)
> and Lafler v. Cooper, 132 S.Ct. 1376 (2012). On January 17, 2014, the PCRA court
> dismissed the petition as untimely filed. Judge Jeffrey P. Minehart, sitting as the
> PCRA court, issued the PCRA decision for the benefit of the Superior Court on
> April 14, 2014, stating that while the petition was facially timely because it was
> filed within sixty days of the date the Frye and Lafler cases were handed down, no
> relief was due petitioner because the Superior Court had held in Commonwealth v.
> Feliciano, 69 A.3d 1270 (Pa. Super. 2013), that neither Frye nor Lafler created a
> new constitutional right that applied retroactively. Therefore, petitioner's claim that
> his untimely PCRA petition fit within the one-year limitations exception found at
> 42 Pa. C.S.A. § 9545(b)(1)(iii) lacked merit because neither Frye nor Lafler set
> forth "a constitutional right that was recognized by the Supreme Court of the United
> States" that would provide him with an exception to the PCRA timeliness
> requirements and petitioner failed to plead or prove a statutory exception to the
> PCRA timebar. Commonwealth v. Ivey, 4/14/14 (PCRA Ct. Op.). On December
> 5, 2014, the Pennsylvania Superior Court affirmed the order dismissing the PCRA
> petition. Commonwealth v. Ivey, 116 A.3d 680 (Pa. Super. Dec. 5, 2014) (unpub.).
> Petitioner did not file a petition for allowance of appeal in the Pennsylvania
> Supreme Court.

(Doc. No. 26 at 4-6.)

On January 20, 2017, Petitioner filed a pro se Petition for Writ of Habeas Corpus pursuant

to 28 U.S.C. § 2254. (Doc. No. 1.) On January 30, 2017, this Court ordered that Petitioner refile

his Petition using the Court's requisite 28 U.S.C. § 2254 standard form. (Doc. No. 3.) Petitioner

filed a revised Petition for Writ of Habeas Corpus using the standard § 2254 form on February 13,

2017. (Doc. No. 5.) In it, Petitioner asserts three grounds for relief: (1) ineffective assistance of

counsel; (2) "the bloody gun was clean, destroying evidence" – which the Court construes as

Petitioner's claim that false and/or suppressed evidence was presented at his degree-of-guilt

hearing; and (3) procedural default. (Id. at 8-13.)

On May 7, 2018, Magistrate Judge Perkin issued an R&R recommending that the Petition be denied as untimely and that a certificate of appealability not be issued. (Doc. No. 26.) On May 25, 2018, Petitioner filed Objections to the R&R (Doc. No. 29), which are now before the Court for review.

## III. STANDARD OF REVIEW

Under 28 U.S.C. § 636(b)(1)(B) and the local rules of this Court, a district judge may designate a magistrate judge to make proposed findings and recommendations on petitions for post-conviction relief. See § 636(b)(1)(B); E.D. Pa. Civ. R. 72.1. Any party may file objections in response to the magistrate judge's report and recommendation. § 636(b)(1)(C). Whether or not an objection is made, a district judge "may accept, reject, or modify, in whole or in part, the findings of recommendations made by the magistrate judge with further instructions." Id. "[I]t must be assumed that the normal practice of the district judge is to give some reasoned consideration to the magistrate's report before adopting it as the decision of the court." Henderson v. Carlson, 812 F.2d 784, 878 (3d Cir. 1987).

In the Eastern District of Pennsylvania, Local Rule 72.1.IV(b) governs a petitioner's objections to a magistrate judge's report and recommendation. E.D. Pa. Civ. R. 72.1. Under that rule, a petitioner must "specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections." Savior v. Superintendent of Huntingdon SCI, No. 11-5639, 2012 WL 4206566, at *1 (E.D. Pa. Sept. 20, 2012). For pro se litigants, however, this rule may be relaxed. See McCabe v. Pennsylvania, 419 F. Supp. 2d 692, 695 (E.D. Pa. 2006) (treating pro se litigant's letter to court as an objection).

The district judge "shall [then] make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. [The] judge . . .

may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1); Sample v. Diecks, 885 F.2d 1099, 1106 n.3 (3d Cir. 1989). "Although [the] review is de novo, [a district judge] [is] permitted, by statute, to rely upon the magistrate judge's proposed findings and recommendations to the extent [the judge], in the exercise of sound discretion, deem[s] proper." Owens v. Beard, 829 F. Supp. 736, 738 (M.D. Pa. 1993) (citing United States v. Raddatz, 447 U.S. 667, 676, 100 S.Ct. 2406 (1980)).

## IV.    ANALYSIS

As noted, Petitioner raised three claims for relief in his Petition: (1) ineffective assistance of counsel; (2) false and/or suppressed evidence was presented at his degree-of-guilt hearing; and (3) procedural default.  (Doc. No. 5 at 8-13.)  Magistrate Judge Perkin recommended that the Petition be denied, finding that it was time-barred under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") and, further, that it could not be rendered timely by statutory or equitable tolling.  (Doc. No. 26.)

In his Objections, Petitioner contends that the R&R erroneously concluded that his Petition could not be rendered timely under the AEDPA.  (Doc. No. 29.)  Petitioner argues that he is entitled to equitable tolling of the AEDPA limitations period because he has been pursuing this case diligently.  (Id. at 12.)  Petitioner also argues that the actual innocence exception to the AEDPA limitations period applies to him because evidence that he shot Melvin Robertson in self-defense was either misrepresented to the trial court at his degree-of-guilt hearing or withheld from the court altogether.  (Id. at 4-11.)  Aside from timeliness, Petitioner's Objections raise claims for ineffective assistance of counsel and a claim that his Sixth Amendment right to confront witnesses was violated.  (Id. at 3, 8-9.)  The Court will address each of Petitioner's Objections in turn.

### A. Petitioner's Objections to the Determination that the Petition is Untimely are Without Merit

Despite filing this Petition fifteen (15) years after his judgment of sentence became final, Petitioner objects to the R&R's determination that the Petition is untimely under the AEDPA and cannot be rendered timely by equitable tolling or the actual innocence exception. For the following reasons, the Court agrees with the R&R that the Petition is untimely.

### 1. Timeliness

In 1996, Congress passed the AEDPA which enacted a one-year statute of limitations for federal habeas corpus petitions. 28 U.S.C. § 2244(d). Section 2244(d) provides:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—
>
> > (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> >
> > (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> >
> > (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> >
> > (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

Id. Absent one of the circumstances described in § 2244(d)(1)(B)-(D), the one-year period begins to run on the date the judgment of sentence becomes final in state court, unless statutory or

equitable tolling applies.  Id.  Statutory tolling, set forth at § 2244(d)(2), extends the one-year period to account for "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending . . . ."

In this case, the Magistrate Judge determined that Petitioner had not satisfied one of the circumstances described in § 2244(d)(1)(B)-(D) and that his Petition therefore was subject to a one-year period beginning on the date his judgment of sentence became final, March 18, 2002. (Doc. No. 26 at 8.)  The Magistrate Judge also determined that statutory tolling did not apply because each of Petitioner's three PCRA petitions were untimely and, thus, not "properly filed" for purposes of § 2244(d)(2).  (Doc. No. 26 at 10); Pace v. DiGuglielmo, 125 S.Ct. 1807, 1814 (2005).  Petitioner's first PCRA petition was untimely because it was filed on April 21, 2003, approximately one month after his statute of limitations under the PCRA had expired.  (Doc. No. 26 at 10, 15-16.)  Petitioner's second PCRA petition was untimely because the trial court held that Petitioner had not satisfied the "after-discovered evidence" exception to the PCRA timeliness requirement.  (Id. at 4-5.)  Similarly, Petitioner's third PCRA petition was untimely because the trial court found that Petitioner had not demonstrated a new "constitutional right" which would warrant invoking an exception to the PCRA limitations period.  (Id. at 5.)

Petitioner does not object to the R&R's determination that the one-year period for filing this Petition began to run on March 18, 2002, nor does he object to the R&R's determination that statutory tolling does not apply.[4]  Accordingly, Petitioner had until March 18, 2003 to file this

---

[4]  Petitioner does not dispute the Magistrate Judge's finding in the R&R that statutory tolling does not apply, but rather contends that his first PCRA petition was untimely because his counsel missed the deadline to file.  (Doc. No. 29 at 12.)  Regardless, statutory tolling is not warranted because the PCRA petitions were still untimely.  Even so, Petitioner's claim is meritless because as the trial court noted, supra, Petitioner filed his first PCRA petition pro se on April 21, 2003, after the deadline had already passed.  (Doc. No. 26 at 4.)

Petition. Because Petitioner did not file this Petition until January 20, 2017, nearly fourteen years later, the Petition is untimely.

## 2. Equitable Tolling

Despite filing this Petition fifteen years after his judgment of sentence became final, Petitioner also objects to the finding in the R&R that the Petition is untimely because he asserts that he is entitled to equitable tolling of the AEDPA one-year period. (Doc. No. 29.) For the following reasons, the Court agrees with the R&R that Petitioner is not entitled to equitable tolling.

In addition to statutory tolling under § 2244(d)(2), the limitations period under the AEDPA can be equitably tolled if the petitioner shows "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." Holland v. Florida, 560 U.S. 631, 649 (2010). While "[t]here are no bright lines in determining whether equitable tolling is warranted in a given case. . . . courts must be sparing in their use of equitable tolling." Sistrunk v. Rozum, 674 F.3d 181, 190 (3d Cir. 2012) (internal citations omitted).

Here, the R&R concluded that no extraordinary circumstances prevented Petitioner from timely filing this Petition. (Id. at 12-16.) The R&R specifically discussed Petitioner's "mental disorder" and considered Reed D. Goldstein, Ph.D.'s 1999 Report of Neuropsychological Evaluation, which found that Petitioner's intellectual functioning fell within "borderline range."[5]

---

[5] In his Objections, Petitioner claims that the trial court improperly dismissed Dr. Goldstein's expert testimony and "should have called another expert." (Doc. No. 29 at 9.) Petitioner's Objection is meritless. As explained by the Pennsylvania Supreme Court:

It is well established in this Commonwealth that the standard for qualification of an expert witness is a liberal one. The test to be applied when qualifying an expert witness is whether the witness has any reasonable pretension to specialized knowledge on the subject under investigation. If he does, he may testify and the weight to be given to such testimony is for the trier of fact to determine.

(Id. at 12-14.) In concluding that Petitioner's mental disorder did not rise to level of an extraordinary circumstance for purposes of equitable tolling, the R&R states as follows:

> There is no evidence in this case that Petitioner was adjudicated incompetent or institutionalized for a mental impairment during the time period following his conviction, during the state court appeals process, or during the habeas statutory period. In fact, Petitioner has not provided any medical evidence, documentation or medical records to support his current allegations of mental impairment.

(Id. at 14-15.) Petitioner does not object to the determination in the R&R as to his mental disorder and does not argue that an extraordinary circumstance prevented him from timely filing this Petition.

Rather, Petitioner objects to the portion of the R&R in which the Magistrate Judge found he had not pursued this case diligently. (Doc. No. 26 at 15.) Petitioner specifically contends that he has worked steadfastly on his case but that his attempts to timely file this Petition were thwarted by his inability to "read or write properly" and consequent need to rely on the help of other inmates. (Id.) The Court is not persuaded.

As discussed in the R&R, beginning as far back as at least 2003, Petitioner "garnered the assistance of fellow inmates to file his three PCRA petitions." (Id. at 15-16.) Compared to his PCRA petitions, Petitioner waited fourteen years before seeking assistance to file this Petition.[6]

---

Miller v. Brass Rail Tavern, 664, A.2d 525, 528 (Pa. 1995). In this case, the trial court served as the "trier of fact" at Petitioner's degree-of-guilt hearing. Consequently, the court acted well within its discretion in determining what weight to assign to Dr. Goldstein's testimony.

[6] The R&R references the fact that all three of Petitioner's PCRA petitions were untimely. (Doc. No. 26 at 15-16.) Petitioner objects to this finding, claiming that it was his direct appeal counsel, and not his own lack of due diligence, that caused his first PCRA petition to be filed late. (Doc. No. 29 at 12.) As discussed in Note 4, supra, Petitioner's claim is without merit and regardless of merit, the R&R references Petitioner's PCRA attempts simply to contrast Petitioner's actions in state court with his actions here: "Petitioner did not act in a reasonably diligent fashion because a reasonably diligent petitioner would have acted promptly to preserve his rights not only in state court, but also in this Court." (Doc. No. 26 at 15.) Consequently, why the PCRA

(Id.)  Besides reiterating his need for inmate assistance, Petitioner provides no explanation in his Objections for why he waited fourteen years to take action in this Court.  Consequently, the Court agrees with the R&R that Petitioner has not diligently pursued this case and that equitable tolling of the AEDPA is not warranted.

### 3.    Actual Innocence

In addition to equitable tolling, Petitioner seeks to overcome the AEDPA's statute of limitations by claiming that "new evidence," proving he acted in self-defense and not with the requisite intent to kill for first-degree murder, was falsely presented to the trial court and/or suppressed at his degree-of-guilt hearing.  (Doc. No. 29.)  As such, Petitioner claims that he is innocent of first-degree murder and that the AEDPA limitations period does not bar this Petition. After considering Petitioner's "new evidence," the Court is not persuaded.

To prevent a "fundamental miscarriage of justice," a district court may consider an otherwise time-barred § 2254 habeas corpus petition where the petitioner makes a "credible showing of actual innocence."  McQuiggin v. Perkins, 569 U.S. 383, 392 (2013).  In McQuiggin, the Supreme Court set forth the requisite standard for successfully proving the actual innocence exception:

> [A]ctual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar, as it was in Schlup and House, or, as in this case, expiration of the statute of limitations.  We caution, however, that tenable actual-innocence gateway pleas are rare: "[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt."

---

petitions were untimely has no bearing on the conclusion in the R&R that Petitioner did not act with due diligence in pursuing his case here.

Id. at 1928 (quoting Schlup v. Delo, 513 U.S. 298, 329 (1995), and citing House v. Bell, 547 U.S. 518, 538 (2006)). Accordingly, to satisfy the actual innocence standard, a petitioner must (1) present new, reliable evidence and, (2) show that "no reasonable juror would have convicted him in light of the new evidence." Houck v. Stickman, 625 F.3d 88, 93 (3d Cir. 2010) (citing Schlup, 513 U.S. at 327). "New, reliable evidence" includes evidence that was not presented at trial. Schlup, 513 U.S. at 324.

Under the first prong of the actual innocence standard, Petitioner asserts that evidence of him acting in self-defense and shooting Melvin Robertson out of fear for his own life was falsely presented or suppressed at his degree-of-guilt hearing. (Doc. No. 29 at 3.) Petitioner primarily relies on two pieces of "new evidence" to support his claim: (1) the government misled the trial court into thinking that the gun used to shoot Mr. Robertson was found in a clean, not bloody, condition; and (2) the government incorrectly summarized the autopsy report, falsely stating that the report found evidence that the shootings were at "close range."[7] (Id. at 6, 8-9.) As discussed below, this evidence is insufficient to satisfy the actual innocence standard.

First with respect to the gun, Petitioner contends the government misled the trial court by showing it a "clean" gun, even though the gun was covered in Petitioner's blood when it was

---

[7] Petitioner also argues that Thomas Wood, an eyewitness to the shooting who testified on behalf of the government, lied on the witness stand and contradicted the original statement he made to the police on the night of the shooting. (Doc. No. 29 at 8-9.) Upon review of Wood's statement to the police and his testimony at the degree-of-guilt hearing, there is no evidence to support Petitioner's claim that Wood lied or contradicted himself on the stand. In his interview the night of the shooting, Wood told police that he witnessed Petitioner shoot Melvin Robertson twice in the chest and then, once Robertson was down, walk over and attempt to shoot him once in the head. (Doc. No. 1-4 at 15.) This information is consistent with the testimony Wood gave both on direct and on cross-examination at Petitioner's hearing. (Doc. No. 1-4 at 19-38.) Wood's testimony is also consistent with the findings in the autopsy report, discussed infra, because he testified that Petitioner shot Melvin Robertson from across the room, and then unsuccessfully attempted to shoot him at close-range. (Id.) Consequently, Petitioner's claims about Thomas Wood are unpersuasive and insufficient to invoke the actual innocence exception to the AEDPA.

recovered by the police. (Doc. No. 29 at 5.) Petitioner argues that evidence of his blood on the gun would have proven that he too was harmed in the altercation with Melvin Robertson and, thus, reacted in self-defense when he shot Robertson and not with the specific intent to kill. (Id.) On that point, Petitioner also argues that the government withheld from the degree-of-guilt hearing a DNA analysis of the gun which, if produced, would have confirmed that the gun was covered with his blood. (Id. at 5, 7, 9-10.)

There is no evidence to support either of Petitioner's contentions. Petitioner's trial counsel and the District Attorney stipulated at the degree-of-guilt hearing to the ballistics report on the gun. (See Doc. No. 1-2, at 35-39.) In summarizing the ballistics report, the District Attorney stated that the gun "had been recovered from the highway," and he did not otherwise go into detail on the condition the gun was in when it was recovered. (Id. at 36.) There is no evidence that the District Attorney "lied" to the trial court and represented that the gun was clean when found. As to Petitioner's claim that a DNA analysis of the gun was withheld from the trial court, the record is devoid of evidence that a DNA analysis was ever conducted, let alone withheld. Consequently, Petitioner has no evidence, and certainly no "new evidence," to support his claim that the prosecution lied to the trial court about his blood being on the gun when the gun was recovered.

Second, Petitioner claims that the District Attorney incorrectly summarized the autopsy report of Melvin Robertson by falsely stating that the report found Mr. Robertson was shot at "close range." (Doc. No. 29 at 6, 8-9.) Based on the trial court transcripts, however, the District Attorney accurately summarized the autopsy report:

> The first [wound] is described as that penetrating gunshot wound of the left temple. There was no evidence of close range firing on gross examination around the wounds. . . . In addition, wound number two is described as a penetrating gunshot wound of the right upper chest. Again, there was no evidence of close range firing around the wound. . . . And the third wound, Your Honor, is described as a perforating gunshot wound to the back of the left hand. It entered into the back of

the left hand between the left thumb and left index finger.  It exited out of the hand, Your Honor, and there was, again, no evidence of close range firing around this wound.

(Doc. No. 1-2 at 41-42; <u>see</u> Doc. No. 1-2 at 31-34 (autopsy report).)  At no point did the District Attorney state that Melvin Robertson was shot at close range.  Consequently, Petitioner's second claim of "new evidence" lacks merit.

Under the second prong of the actual innocence standard, Petitioner argues that "with this new evidence, it is more likely than not, that no factfinder would have found petitioner guilty of first degree murder."  (Doc. No. 29 at 7.)  Petitioner specifically contends that the autopsy report and the bloody gun prove his innocence of first-degree murder, arguing:

> [The] Autopsy report states . . . all bullets was [sic] traveling in a[n] upward [manner][.]  [T]his means that petitioner fired the gun from a downward position.  Next.  Detectives stated that when they found the gun it was bloody!  [T]his once again verif[ies] this petitioner['s] claim that he shot himself in the back of his hand because his left hand was in the air in front of his face to block expected bullets from [Melvin Robertson].

(<u>Id.</u>)

Petitioner's argument lacks merit since both the autopsy report and the ballistics report were stipulated to by Petitioner's counsel and submitted for the trial court's consideration at his degree-of-guilt hearing, which was prior to sentencing.  The trial court, even with the benefit of these reports, concluded that Petitioner was guilty of first-degree murder because of his "calm and deliberate actions in walking over to the decedent as he lay helpless on the floor, bleeding from two gunshot wounds to his vital organ, placing a gun next to his head and attempting to shoot him twice again in the head at close range."  (Doc. No. 26 at 3, citing <u>Commonwealth v. Ivey, No.</u>, 9/21/2000 (Tr. Ct. Op.), pp. 5-6.) Petitioner's "new evidence" and the arguments made in his Objections to the R&R fail to prove that "no reasonable juror would have convicted him in light of the new evidence."

Consequently, Petitioner is not entitled to the actual innocence exception to the AEDPA limitations period and his Objections with respect to timeliness will be overruled.

### B. Petitioner's Objection Regarding Ineffective Assistance Of Counsel Lacks Merit

In his Objections, Petitioner also claims that his trial counsel was ineffective for two reasons. First, Petitioner contends trial counsel failed to inform him that taking a guilty plea would leave open the possibility of his being sentenced to life in prison. (Doc. No. 26 at 3-4.) For that reason, Petitioner asserts his guilty plea was not made voluntarily or knowingly. (Id.) Second, Petitioner claims that trial counsel was ineffective for advising him not to testify at his degree-of-guilt hearing despite Petitioner's requests to "take the stand and tell the truth."[8] (Id.)

When addressing the merits of ineffective assistance of counsel claims on habeas review, the "clearly established federal law" applicable to such claims is the familiar two-pronged inquiry articulated by the Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984). Williams v. Taylor, 529 U.S. 362, 363 (2000). In Strickland, the United States Supreme Court held that to prevail on an ineffective assistance of counsel claim, a petitioner must meet two requirements: (1) he must show "that counsel made errors so serious" that were "outside the wide range of professionally competent assistance"; and (2) he "must show that the deficient performance prejudiced the defense" and was "so serious as to deprive [him] a fair trial." Id. at 687-690. The

---

[8] Petitioner also states in his Objections, albeit somewhat incomprehensively, that "Petitioner Counsel agrees with the DA that the shooting was close range while knowing it to be false, trial counsel also withheld the truth from the Court." (Doc. No. 29 at 9.) The Court construes this Objection to be an argument that Petitioner's counsel was ineffective for agreeing with the District Attorney's summary of the autopsy report even though the District Attorney's summary, in Petitioner's view, contradicted the report. But as previously discussed, the District Attorney accurately summarized the autopsy report's finding that there was no evidence of a close-range shooting for each of Melvin Robertson's bullet wounds. As such, Petitioner's ineffective assistance of counsel claim on this basis is moot and will not be addressed.

<u>Strickland</u> test is also used where, as here, the validity of a guilty plea is called into question based on ineffective assistance of counsel.  <u>Powell v. Meyers</u>, 214 Fed. App'x 197, 199 (3d Cir. 2007) (citing <u>Hill v. Lockhart</u>, 474 U.S. 42, 48 (1985)).

First, with respect to Petitioner's guilty plea, he argues the plea is invalid because his attorney never made clear to him that he would still be at risk of receiving a life sentence and, because of that, he took the plea unknowingly and under the "impression that the life sentence would be dropped with [the] death penalty."  (Doc. No. 29 at 4.)  The Court is not convinced by this argument, however, because the record proves that Petitioner knew a life sentence could be imposed based on the guilty plea:

> The Court:  With regard to the charge of murder generally, that would include murder in the first degree, and if I found you guilty of the charge of murder in the first degree, I could either impose a term of life imprisonment, or if there was a penalty phase, I could determine that it would be appropriate for you to face the death penalty. Do you understand that?
>
> The Defendant:  Yes, ma'am.
>
> . . .
>
> The Court:  Let me just clarify that.  You have heard what the District Attorney has said.  In light of your agreement to plead guilty to murder generally, if I found you guilty of murder in the first degree, the maximum penalty that I would impose is life imprisonment; do you understand that?
>
> The Defendant:  Yes, ma'am.
>
> . . .
>
> The Court:  Has anyone made any threats or promises other than the promise by the Commonwealth not to seek the death penalty that would cause you to enter a plea of guilty to murder generally?
>
> The Defendant:  No, no, ma'am.
>
> . . .

| The Court: | Do you have any questions and have you reviewed your decision to plead guilty to murder generally with Mr. Newman? |
|---|---|
| The Defendant: | Yes, ma'am. |
| . . . | |
| The Court: | You are pleading guilty to the charge of murder generally of your own free will? |
| The Defendant: | Yes, ma'am. |

(Doc. No. 1-1 at 44-45, Doc. No. 1-2 at 1-3.)

Petitioner's counsel also explicitly advised him that a life sentence was a possibility prior to him taking a plea.  (Doc. No. 1-1 at 19.)  In a letter dated December 17, 1999, Petitioner's counsel wrote, "I believe we have a decent chance of getting you away from the life sentence.  Of course it is all a gamble . . . ."  (Id.)  Through the court and his counsel, Petitioner was advised several times that pleading guilty to murder generally could result in a substantial sentence, including life imprisonment.  Petitioner's ineffective counsel argument on this basis therefore lacks merit.

Second, Petitioner's claim that trial counsel was ineffective for advising him not to testify is also meritless.   Every defendant has a constitutional right "to testify on his or her behalf at his or her own criminal trial."  United States v. Pennycooke, 65 F.3d 9, 10 (3d Cir.1995) (citations omitted).  While defense counsel has a duty to inform a defendant of his right to testify, the "right is personal and thus only the defendant may waive it."  Id. at 10. To prove ineffective assistance based on trial counsel's interference with the right to testify, a defendant "must produce something more than a bare, unsubstantiated, thoroughly self-serving, and none too plausible statement that his lawyer (in violation of professional standards) forbade him to take the stand."  Underwood v. Clark, 939 F.2d 473, 475 (7th Cir. 1991).

Petitioner claims that "letters from [c]ounsel in [his] original habeas . . . will show [c]ounsel advising petitioner not to take the stand and tell the truth." (Doc. No. 29 at 9.) Upon review of the record, the letter to which Petitioner is referring was sent by trial counsel on October 22, 1999 and states in part:

> I will endeavor to come up to see you, whether you are at Graterford, or at CFCF. We can then discuss whether or not you are going to take the witness stand, and if so, exactly what I will ask you. Frankly, if you do take the witness stand, I prefer that you simply tell the judge what you had previously told me: that you believed the guy was reaching, and that's why you shot him. Indeed, the less I ask you, probably the better.
>
> The district attorney's cross-examination would probably be, "Why did you initially not tell the police the truth and, is everybody else lying about how the shooting actually went down?" Your best bet in that instance is again, to tell the truth: that you were not exactly truthful with the FBI, although you did tell the detective the truth, and that you are doing your best to tell the truth in court, before the judge.
>
> We will go over all of this again when I see you.

(Doc. No. 1-1 at 17-18.)

Contrary to Petitioner's assertion, this letter establishes that Petitioner's counsel was preparing him for potentially testifying, not prohibiting him from doing so. Under Strickland, trial counsel's advice in this letter regarding Petitioner's right to testify is clear, and there is no evidence to prove that Petitioner was prejudiced by his decision not to take the stand. Consequently, Petitioner's Objections regarding ineffective assistance of counsel will be overruled.

### C. Petitioner's Objection Regarding His Right Of Confrontation Lacks Merit

Finally, Petitioner contends that his constitutional right to confront witnesses was violated because he was not given the opportunity at his degree-of-guilt hearing to cross examine Dr. Lieberman, the doctor who prepared the autopsy report on Melvin Robertson. (Doc. No. 29 at 8.) Petitioner's claim lacks merit because it is well-established that a stipulation by trial counsel to the

admission of a report acts as a waiver of Confrontation Clause rights. <u>Wheeler v. U.S.</u>, No. 13-2557, 2015 WL 2344702, at *8 (D.N.J. May 13, 2015) (citing <u>United States v. Merchant</u>, 376 Fed. App'x 172, 178 (3d Cir. 2010)). At Petitioner's degree-of-guilt hearing, his trial counsel stipulated to the admission of the autopsy report. (Doc. No. 1-2 at 41-43.) That stipulation waived Petitioner's right to confront Dr. Lieberman.

To the extent Petitioner contends that trial counsel's stipulation proves ineffective assistance of counsel, that contention is also meritless. As previously discussed, the state records prove that the District Attorney accurately summarized the autopsy report at the degree-of-guilt hearing. (Doc. No. 1-2 at 41-43, Doc. No. 29 at 8-9.) Moreover, there is no evidence that the facts of the autopsy report were otherwise in dispute. Consequently, under <u>Strickland</u>, Petitioner's trial counsel did not err in stipulating to the admission of the autopsy report and the stipulation did not prejudice the outcome of Petitioner's case. Accordingly, Petitioner's objection regarding the admission of the autopsy report, construed under either the right of confrontation or ineffective assistance of counsel, lacks merit and will be overruled.

**D.    Petitioner Is Not Entitled To A Certificate Of Appealability**

Petitioner does not object to the Magistrate Judge's finding in the R&R that a Certificate of Appealability should not be issued. A Certificate of Appealability will not be issued in this case because, based on the analysis contained in the R&R, as approved and adopted by this Court, a reasonable jurist could not conclude that the Court is incorrect in denying and dismissing the Habeas Petition. <u>See</u> 28 U.S.C. § 2253(c)(2); <u>Slack v. McDaniel</u>, 529 U.S. 473 (2000).

**V.    CONCLUSION**

For the foregoing reasons, the Court will adopt Magistrate Judge Perkin's Report and Recommendation (Doc. No. 26) and will deny Petitioner's Petition for Writ of Habeas Corpus (Doc. No. 5). An appropriate Order follows.